FILED
2016 Jan-05  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| CHARLES CATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: |
| vs. ) | 4:14-CV-01866-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Charles Cates, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. Mr. Cates timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Cates was forty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 33, 35 127, 217.) His past work experiences include employment as a construction laborer, a sanitation worker, and a fast food worker. (Tr. at 36-37.) Plaintiff also reported that

he hung sheetrock for twenty years for cash while working for his father. (Tr. at 192, 271, 279.) Mr. Cates claims that he became disabled on January 1, 1995, due to bipolar disorder, mental retardation, asthma, and drug and alcohol abuse. (Tr. at 10, 13, 39, 102, 123, 205, 217.)

The Social Security Act authorizes payment of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1); 20 C.F.R. §§ 404.315(a)(3), 416.202(a)(3) (2015). The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of

impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant

work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled.  *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Cates meets the insured status requirements of the Social Security Act through September 30, 1998, meaning that he had to establish disability on or before that date. (Tr. at 12.) He further determined that Mr. Cates has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's diagnosis of bipolar disorder is considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that Mr. Cates's impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 13.) The ALJ determined that that Mr. Cates

has the following RFC: to perform a full range of work at all exertional levels, but with the nonexertional limitations that he should have no contact with the general public and only occasional contact with co-workers. Additionally, he should perform work that has no production quotas and simple, non-complex job tasks that require no more than normal work place judgment. (Tr. at 14-15.)

According to the ALJ, Mr. Cates is able to perform his past relevant work as a sanitation cleaner as it is actually performed. (Tr. at 22.) The ALJ further determined that based on Plaintiff's RFC, age, education, and work experience, there are also a significant number of other jobs in the national and state economy that he is capable of performing, such as dishwasher, hand packager, and equipment cleaner. (Tr. at 23.) The ALJ concluded his findings by stating that Plaintiff "was not under a disability, as defined in the Social Security Act from January 1, 1995, through the date of the decision." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v.*

*Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Mr. Cates alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Plaintiff believes that the ALJ erred in giving little weight to the opinion of a consultative examiner, Dr. David Wilson. Second, Plaintiff contends that the ALJ should have ordered additional IQ tests to determine whether Plaintiff is mentally retarded.

### A.  Weight to One-Time Consultative Examiner's Opinion

Consultative opinions from non-treating physicians, such as the one from Dr. Wilson, are not entitled to the same controlling weight that treating physicians' opinions are entitled to receive. *See* 20 C.F.R. §§ 40.1527(c)(2), 416.927(c)(2). Instead, the ALJ weighs all non-controlling medical opinions under various factors, including the length and frequency of the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Additionally, the ALJ may reject the opinion of any physician if the evidence

supports a different conclusion than the one reached by the physician. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Dr. Wilson examined Mr. Cates in February 2013 at the request of his attorney. (Tr. at 230.) Dr. Wilson diagnosed Bipolar Disorder (mixed), ankle problems, history of alcohol dependence, possible dementia, personality disorder NOS with paranoid features, asthma, and mental retardation. (Tr. at 228.) The diagnosis of mental retardation was reached upon the administration of the WAIS-IV, in which Mr. Cates scored a 59, and the Wechsler Individual Achievement Test (WIAT), in which Mr. Cates scored a 72. (Tr. at 227.) Dr. Wilson reported that these scores placed Mr. Cates in the mildly retarded range with significant deficits in all areas. (Tr. at 227-28.) Based upon the mental retardation and bipolar diagnoses, Dr. Wilson concluded that Mr. Cates faced extreme limitations in virtually every area, which made it highly unlikely that he could maintain any type of job. (Tr. at 228.)

As noted by the ALJ (tr. at 20), if adopted, Dr. Wilson's findings would indicate disabling limitations because Plaintiff may have met Listing 12.05 regarding mental retardation.[1] A claimant may meet Listing 12.05(B) by showing a

---

1   Effective September 3, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." *See* 78 Fed. Reg. 46,499, 46,501. This change was made because the term *mental retardation* had negative connotations, and had become offensive to many people. *Id.* at 46,499. However, the

"valid verbal, performance, or full scale IQ of 59 or less" and deficits in adaptive functioning initially manifested before the age of 22. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A), § 12.05(B). Thus, if the ALJ were to have adopted Dr. Wilson's opinion, Plaintiff may have been found disabled at step three of the sequential evaluation. *See* 20 C.F.R. §§ 404.1525(a), 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) (the listings describe impairments severe enough to prevent a person from doing any gainful activity).

However, as the ALJ correctly found, Dr. Wilson's opinion that Plaintiff suffered from disabling mental retardation was contrary to the other medical source opinions in the record. First, Mr. Cates was also examined by Dr. Nichols, another one-time consultative examiner, on November 29, 2011. (Tr. at 200-03.) Dr. Nichols observed Plaintiff to be oriented as to person, place, time, and situation; he had adequate mental processing speed; and he could perform simple addition, subtraction, and multiplication. (Tr. at 201-02.) According to Dr. Nichols, Plaintiff exhibited intact recent and remote memory; lacked a general fund of knowledge; and was somewhat concrete in thought. (*Id.*) Her diagnostic impression was bipolar II disorder, current episode mixed, mild; polysubstance dependence in remission by patient report; and a global assessment of functioning of 65. (*Id.*) Dr. Nichols

---

Commissioner explained this change "does not affect the actual medical definition of the disorder…." *Id.* at 46,500. To avoid confusion, this opinion uses the term "mental retardation" employed by the ALJ and Dr. Wilson.

9

commented that Plaintiff did not have deficits that would interfere with his ability to understand, carry out, and remember simple work related instructions; he could handle his own funds; and he could live independently. (*Id.* at 203). Dr. Nichols commented that Plaintiff's ability to relate interpersonally and withstand the pressures of everyday work was mildly compromised due to the nature of his mood disturbance. (*Id.*) Dr. Nichols opined that with mental health treatment, his condition would improve. (*Id.* at 203.) Substantial evidence supports the ALJ's decision to accord little weight to Dr. Wilson's findings, and instead, accord greater weight to the opinions of Dr. Nichols, because her examination findings were more consistent with Plaintiff's significant daily activities, educational background, and work history.

Indeed, both Drs. Nichols and Wilson are licensed psychologists who examined Plaintiff on only one occasion, and therefore, are not entitled to greater or lesser weight based on their specialty or relationship with Plaintiff. 20 C.F.R. §§ 404.1527(c)(1), (c)(5), 416.927(c)(1), (c)(5). However, Plaintiff's significant educational and work history and daily activities better supported Dr. Nichols' opinion and were contrary to Dr. Wilson's mental retardation diagnosis. *Id.* at §§ 404.1527(c)(3), 416.927(c)(3). Importantly, both the ALJ and a medical expert, Dr. Anderson, who testified at the hearing, questioned Dr. Wilson's diagnosis of

mental retardation. (Tr. at 20, 49). This is because Plaintiff was a high school graduate who was enrolled in regular classes and never required special education services. (Tr. at 20, 49, 127, 191, 201, 225, 268). Though he made C's, D's, and F's in school, Plaintiff stated that his low grades in school were at least partially a result of his own truancy. (Tr. at 20, 49, 127, 191, 201, 225, 268.) Additionally, Plaintiff had worked for many years in various jobs such as a construction, sanitation, and fast food worker. (Tr. at 36-37, 201). Indeed, as noted by the ALJ, Plaintiff reported he had hung sheetrock for 20 years for cash while working for his father. (Tr. at 192, 271, 279). When the ALJ asked him why he cannot work the claimant replied: "Honestly, sir, I don't like - - when somebody tells me what to do, I won't do it to their standards. I'll do it my way or no way. I don't like to be around other people." (Tr. at 39). The ALJ also explained that Plaintiff could take care of his personal hygiene, feed himself, and surf the internet. (Tr. at 46, 151, 202). In particular, Plaintiff stated he lived alone in a mobile home on his father's property (tr. at 34, 149, 202), owned a car and could drive (tr. at 34), cooked simple meals (tr. at 46, 151), ate three times per day (tr. at 202), performed chores such as laundry, light cleaning, and mowing the grass (tr. at 46, 151), had no problems with personal care (tr. at 150), went shopping for food and clothes (tr. at 152), and could pay bills and count change (tr. at 152).

Furthermore, the ALJ also noted material discrepancies between Drs. Wilson's and Nichols' examinations. (Tr. at 20-21). Dr. Nichols found Plaintiff had adequate mental processing speed with the ability to perform simple mathematical calculations, including counting backwards from 20 to 1 in just 8 seconds. (Tr. at 20, 201). By contrast, Dr. Wilson reported Plaintiff could not count backwards from 20 and struggled for over a minute and a half to do so. (Tr. at 20, 227). These discrepancies suggested Plaintiff was exaggerating his symptoms with Dr. Wilson because intellectual functioning is generally consistent over time. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001). During Dr. Wilson's examination, Plaintiff also underreported his significant work history, stating "I haven't really worked" except sporadically.  (Tr. at 225). These discrepancies provided further support for the ALJ's decision to accord little weight to Dr. Wilson's opinion.

Plaintiff argues that because Dr. Wilson found that that Plaintiff had an IQ of 59, and Dr. Nichols did not perform an IQ test, that the ALJ was required to adopt Dr. Wilson's opinion and find Plaintiff disabled under Listing 12.05 pertaining to mental retardation. However, in another case, the Eleventh Circuit explained, "the ALJ was not required to find that [Plaintiff] was mentally retarded based on the results of the IQ test. The ALJ is required to examine the results in conjunction

with other medical evidence and the claimant's daily activities and behavior." *Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986). Listing 12.05 requires both a certain low IQ score and substantial deficits in adaptive functioning before age 22, which were not proven in this case, given Plaintiff's substantial work history, educational background, and significant daily activities. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A), § 12.05(B); *Sullivan*, 493 U.S. at 530 (a claimant's impairment must manifest *all* of the medical criteria specified in the listing in order to "meet" the listing). Indeed, numerous Eleventh Circuit cases support reliance on considerations similar to those cited by the ALJ (work history, educational background, and significant daily activities), when assessing a claim of mental retardation under Listing 12.05. *See Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870, 873 (11th Cir. 2014) (finding that despite low IQ scores, the ALJ properly considered claimant's work experience when finding claimant did not meet the listing for mental retardation); *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 985 (11th Cir. 2013) (finding despite a low IQ score, claimant lacked deficits in adaptive functioning where claimant graduated from high school, worked part time, drove, prepared simple meals, and groomed and bathed herself); *Harris v. Comm'r of Soc. Sec.,* 330 F. App'x 813, 815 (11th Cir. 2009) (finding ALJ did not err in rejecting examining psychologist's opinion indicating mental retardation because claimant

could hold down jobs, dress and bathe himself, take care of his personal needs, manage money, read, and do simple math).

Aside from Dr. Nichols' opinion after examination, the opinions of Dr. Anderson, the medical expert, and Dr. Estock, the non–examining reviewing physician, supported the ALJ's decision to give Dr. Wilson's opinion little weight. Dr. Anderson described Plaintiff's diagnosis, treatment, and prognosis as follows:

> We have a 42-year-old gentleman with a mental health problems. He has a diagnosis of bipolar disorder too, a history of poly-substance abuse with self-support of abstinence since filing for disability. He has an evaluation or complications of his substance abuse and he has a positive screening test for hepatitis C. He has no symptoms associated with liver disease and no treatment. The record reflects that he has mild to moderate restrictions based upon his mental health disorders, and physical situation, he would not meet or equal listings with disability. I believe that he would be able to do all age appropriate activities from heavy to medium work would be included. Based upon the evaluation by Dr. Nichols in 2F, I would suggest that his work activities should be restricted to simple repetitive work activity.

(Tr. at 48.) As noted, Dr. Anderson questioned Dr. Wilson's diagnosis of mental retardation because Plaintiff graduated high school with no special education classes. (Tr. at 49.) Great weight was given to the opinion of Dr. Anderson because his findings were supported by the record and he was deemed to be a "highly qualified expert in Social Security disability evaluation." *See* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). The ALJ also discussed the consultative report

of the non-examining State agency doctor Robert Estock. (Tr. at 205-22.) Dr. Estock opined that Plaintiff had mild restriction in activities of daily living; moderate restriction in social functioning; and moderate restriction in concentration, persistence, and pace. (Tr. at 216.) Dr. Estock commented that Plaintiff could understand, remember, and carry out simple instructions; he could concentrate for 2-hour periods on simple tasks with customary breaks; and he should work in an area without close proximity to others with only casual interaction with the general public, gradually introduced changes in the work place, and non-confrontational, supportive, feedback from supervisors and co-workers. (Tr. at 220.) As Dr. Estock's opinion was consistent with Dr. Nichols' opinion and the other record evidence, the ALJ gave it significant weight.

The foregoing establishes that substantial evidence supports the ALJ's decision to accord Dr. Wilson's opinion little weight. As Dr. Wilson's conclusion that Plaintiff was mentally retarded to the extent that he would be unable to function was not supported by the record, the ALJ did not err in giving it little weight.

### B. Failure to Develop the Record

Plaintiff contends that the ALJ erred by not ordering additional IQ tests. The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for

all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 42 U.S.C. § 423(d)(5). An ALJ has many options, but no affirmative requirements, for settling an inconsistency or insufficiency in a claimant's medical record. *See* 20 C.F.R. § 404.1520b. He has the option to contact the treating physician, ask the claimant for additional records, request a consultative examination, or ask the claimant and/or others for more information. *Id.* The ALJ may exercise all or none of these potential remedies. *Id.* He is not required to take any of those steps if he determines that weighing the available evidence will be sufficient. *Id.* Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Furthermore, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware*, 651 F.2d at 413). "Although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a

16

reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

Here, additional IQ testing would not have changed the fact that Plaintiff did not suffer from the deficits in adaptive functioning required to meeting Listing 12.05. As already noted, Plaintiff had significant work history, educational background, and activities of daily living, and even where low IQ scores are present, the ALJ can properly consider these other factors when finding that the claimant did not meet the listing criteria for mental retardation. *See Perkins,* 553 F. App'x at 873; *Hickel,* 539 F. App'x at 985; *Harris,* 330 F. App'x at 815. The plaintiff could perform the same tasks as the claimants in the above cases. (Tr. at 20, 34, 36-7, 46, 149, 150-2, 192, 201-2, 271, 279.)

Moreover, the ALJ was not required to order additional IQ testing because the record contained sufficient evidence for the ALJ to make an informed decision. *KDB ex. rel. Bailey v. Soc. Sec. Admin.*, 444 F. App'x 365, 368 (11th Cir. 2011). Indeed, the ALJ had already ordered two consultative examinations by two different doctors and had a medical expert testify at the hearing. (Tr. at 47-49, 200-03.) Although Dr. Nichols did not perform IQ testing, the evidence better supported Dr. Nichols' opinions regarding Plaintiff's intellectual abilities and

17

provided substantial evidence in support of the ALJ's decision to accord Dr. Wilson's opinion limited weight.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Cates's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON JANUARY 5, 2016.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704